Ranney, J.
The first claim of the plaintiff in error is, that the court erred in overruling the motion for a new trial, and entering judgment for the plaintiff below, after its corporate existence had ceased. To this it is answered that the judgment may relate to the first day of the term, which was in January preceding, and be-thus upheld upon common-law principles; but, if this can not be done, that by our own laws, then and still in force, tho judgment might lawfully have been rendered, and may still be collected, for the benefit of *the assignees of the City Bank. To lay a foundation for the application of these laws, we are presented by counsel with a copy of the act incorporating the Louisiana State Bank, and an assignment to that institution, by the City Bank, of this and other claims, dated April 27, 1850; and the counsel of the State Bank, having been served with the citation, appears and defends this writ of error.
By section 3 of an act relating to informations in the nature of quo warranto, and for other purposes, passed March 12, 1845 (2 Curw. 1153), it is provided that, “ The bona fide assignee or assignees of any non-negotiable bond, bill, note, or other evidence of debt, made payable to any corporation which has been or may be dissolved, may bring suit and prosecute the same to judgment or decree, and have execution thereon in the name of such dissolved corporation, for the use of such assignee or assignees, in the same manner as if such corporation had not been dissolved ; and in all such cases the assignee or assignees for whose use such suit is brought, shall be liable for costs, and required to give security therefor, as if he or they were the legal plaintiff or plaintiffs.”
By the first section of the act of March 10, 1843 (2 Curw. 951), it is enacted that no suit or action, pending in any court in favor or against any corporation, shall abate by the dissolution of the corporation, either by the expiration of its charter or otherwise, but may be prosecuted to final judgment by the assignees or others *152 entitled to the assets, in the name of such dissolved corporation. The act of March 21, 1850, “ in relation to judicial proceedings in favor of and against dissolved corporations,” section 1, provides that “ any banking or other corporation may, at any time after its dissolution, etc., prosecute any suit at law or in equity, by the corporate name of such dissolved corporation, for the use of the party entitled to receive the proceeds of any such suit, upon any and all causes of action accrued, or which but for such dissolution would have accrued, in favor *of such corporation, in the same manner and with the like effect, as if such corporation were not dissolved,” etc.
Section 4 provides “ that writs of error may be sued out for or against the corporation, and by its corporate name, just as if the corporation had continued,” etc. 2 Curw. 1571.
The object of all these enactments is the same; and they were very clearly intended to preserve the rights, and furnish an effectual remedy to those who were justly entitled, by assignment or otherwise, to the rights in action which had accrued to corporations during their continuance, and which must therefore be prosecuted in the name of the corporation, against the operation of the common-law rule which forfeited all such rights, and destroyed all remedies, upon the unconditional dissolution of the corporation and the cessation of its corporate existence. It can not be doubted that this case is within the letter of these statutes, and most clearly within their spirit and object, if they can be construed to extend to assignees holding such claims by assignment from corporations bej’ond the limits of this state. Wo think these provisions may and should bo so extended, upon every principle of sound policy and correct interpretation; but in saying this we do not intend to deny that many of the provisions of these statutes are necessarily confined to corporations deriving their existence from our own laws. Such are all those that operate upon the corporation itself, directly or indirectly abridging or annulling its corporate powers, or in any way controlling it in the exercise of them. The legislature having no extraterritorial power, must be presumed to intend to confine their operation to institutions within its jurisdiction. But the sections above recited have no effect whatever upon the corporation. Their whole object is to furnish a remedy in our own courts, for those equitably entitled to the assets of a dissolved corporation, or having claims against it, where before none could be *153 had. They are designed exclusively for the benefit of such equitable owner or claimant who may be one of our own citizens; and -considering the great number of foreign corporations *doing insurance and other business in the state, is very likely to be or may be a resident of another state; but surely no reason could be given why the remedy should be denied to the one more' than the other. -Falling within the positive provisions of the law, it is not enough to exclude this case from its operation, to say it was not contemplated when the law was enacted. We must be able to, •see some reason to suppose it would have-been excluded in positive terms, if it had occurred to the minds of the assembly at the time. ■Corwin v. Benham, ante.
No such reason is apparent; on the contrary, it is so obviously just and necessary, as to leave no doubt of the propriety of including all the eases covered by the terms of the law. This would seem to us to be the proper construction of these statutes, if the question were entirely res nova; but it has in effect been decided in the case of Lewis v. The Bank of Kentucky, 12 Ohio, 132. The question there was, whether foreign banks, suing in this state, could avail themselves of the act regulating- proceedings where banks and bankers are parties, so as to maintain a joint action against a drawer and indorser. It was held they could: The reason of the law is alike applicable to foreign and domestic banks ; and there is no occasion to restrain the natural import of its words.” An examination of this act will show that it is no more comprehensive in its terms than those we have been considering; and not a reason can be given for giving a restricted construction to these, that would not equally apply to that.
2. The next error assigned relates to the admission of such parts of the depositions of Rondeau and Palfrey, as were objected to on the trial. This testimony consisted of the admission of Hyde, the principal, made shortly before and after his dismissal from office, as to the extent of his defalcation; and also a written statement signed by him and delivered to the other officers of the bank to the same effect. We regard this evidence as all governed by the same principle, and not, therefore, requiring a separate examination.
^Attention to a few general rules -of evidence will, as we think, show that the testimony was improperly received. The general rule is thus stated by Mr. Greenleaf (1 G-roenleaf Ev., *154 sec. 187) : “ We are next to consider the admissions of a principal, as evidence in an action against the surety upon his collateral undertaking. In the cases on this subject, the main inquiry has been. whether the declarations of the principal were made during the transaction of the business for which the surety was bound, so as to become part of the res gestee. If so, they have been admissible; otherwise not. The surety is considered as bound only for the-actual conduct of the party, and not for whatever he might say ho had done; and therefore is entitled to proof of his conduct by original evidence where it can be had, excluding all declarations of the principal, made subsequent to the act to which they relate, and out of the course of his official duty."
The same author, in defining what declarations may be regarded as belonging to the res gestas (sec. 108), confines them to such as affect the character of the principal fact under investigation, and are essential to bo known in order to a right understanding of its nature. And their admissibility is made to depend upon their being contemporaneous with the main fact under consideration, and so connected with it as to illustrate its character, motive, or object. In such case, they are regarded as verbal acts indicating a present purpose and intention, and are therefore admitted in proof, like any other material facts ; it being, however, entirely immaterial to' the principle whether they consist of mere verbal statements, or assume the more certain form of written entries. But where they “ are merely a narrative of a past occurrence, they can- not be received as proof of the existence of such occurrence.” “ They must be concomitant with the principal act, and so connected with it as to be regarded as the mere result and consequence of the coexisting motives, in order to form a proper criterion for directing the judgment, which is to be formed upon the whole conduct.” 1 Greenl. Ev., sec. 110; Doe v. Webber, Ad. & El. 733.
*If not made at the time of the transaction to which they relate, they amount to nothing more than hearsay, and are excluded under the general rule which rejects that description of evidence.
In the case before us, Hyde was charged with having received and converted to his own use, at specified times, and sometime before the declarations were made, several sums of money belonging to the plaintiffs. These facts constitute the breach of the bond relied upon, and were the facts in issue. The evidence received *155 did not tend to show what Hyde said or did, or the entries he made, at the time he so received and converted the money. It consisted merely of acknowledgments or admissions, verbally and in writing, that he had before that time received and converted it, and that he was in default for the amount. Nor does it seem to us important whether he was still in office, or whether he made the written statement, embracing only these few items, while yet in discharge of his official duty. The breach of the bond alleged, is not a failure to make such statement, or that lie made a false statement, but that he received and converted the money. In proof of this fact, the surety had a right to require original evidence, which could only include such declarations and entries as accompanied the principal act to be proved.
The current of authority fully sustains this conclusion.
In Shelby v. The Governor, 2 Black. 249, it was held that a sheriff’s acknowledgment that he had collected money on an order of sale, could not be proved to sustain an action against his surety, unless the acknowledgment was made whilst the sheriff was acting officially in relation to the receipt of the money. The court say: “ Declarations made by him at any subsequent period, would have no connection with the act, and could not be introduced as evidence of the act, so as to bind his sureties; for it is his acts, and not his admissions or declarations, for which his sureties are bound.” And again, in Hotchkiss v. Lyon, 2 Black. 222, it is said: “It is true that, while the principal is acting, his declarations *may be so interwoven with his acts, as to stand in direct connection with them, and form a part of the res gestee, but when he ceases to act, his subsequent declarations have no direct connection with his preceding acts, so as to bind his sureties. The authorities on this subject place the matter beyond dispute.” Smith v. Wittingham, 6 Car. & Payne, 78, was an action against the defendant as surety upon a bond for the faithful conduct of Fisherwick as clerk. A memorandum or account made by Fisherwick, immediately after' his dismissal, purporting to be “ an account of money received by J. Fisherwick, and embezzled by him,” was offered in evidence to prove his defalcation, and rejected. The court say: “This is not an account current; it is only an admission made by Fisherwick, after his discharge, of what he has embezzled: and although it would have been evidence against Fisherwick, is not so against the-defendant.” See also Ward v. Suffield, 5 Bing. N. C. 371; 35- *156 Eng. C. L. 143; Evans v. Beattie, 5 Esp. 26; Baker v. Briggs, 8 Pick. 122; Amherst Bank v. Root, 2 Met. 522; Bacon v. Chesney, 1 Stark. 192; Longonocker v. Hyde, 6 Binn. 1.
But it is thought by counsel for the defendant in error that section 187, quoted from Greenleaf’s Evidence, expresses the opinion of that author, that admissions made by the principal, while in ^office and in the discharge of official duty, may be received against the surety to prove facts that had previously transpired. ¥o do not so understand it, and the cases he relies on would not support such a position. He cites Whitnash v. George, 8 B. & C. 556; Middleton v. Melton, 10 B. & C. 317, and McGahey v. Alston, 2 M. & W. 213.
The'first of these cases was an action on a bond given to bankers for the fidelity of a clerk; and it was held that entries of the receipt of money in books kept by him in the discharge of his duties as clerk, were, after his death, evidence against his sureties of that fact.
Although much reliance is placed by the court upon the fact that the principal was dead, yet the entries wore clearly admissible as a part of the res gestee, for reasons that have been already stated. Middleton v. Melton was upon the bond *of a deceased collector, and the entries being made in a private book, were received against the surety; and although, I should apprehend, admissible as an act contemporaneous with the receipt of the money, yet they were admitted upon the general principle of entries made by persons since •deceased, against their interests.
In McGahey v. Alston, no question of the kind was decided, although it is stated by the reporter in a note, the question was argued, but the court expressed no opinion upon it.
The situation of this case makes it entirely unnecessary to con•■sider the admissibility or effect of such evidence, if Hyde was dead or a party to the suit; but we are clear in the opinion that it ■could not properly be received while he was a living and competent witness.
This determination also makes it unnecessary to decide whether the testimony of Bondeau, as to the results of his examination of the books of the bank, without the production of a sworn transcript of the entries, was admissible or not; unless, as is claimed, this ■evidence was sufficient to warrant the finding of the court, which ■is not vitiated from the fact that illegal evidence was received and *157 acted upon. This position is founded upon a difference which is-supposed to exist between cases in which a jury is waived and the-facts found by the court and those submitted to a jury. We know of no such distinction. The court is, by agreement of the parties, substituted for the jury,' not to try the issue upon different principles, or in disregard of the rules of evidence, but because it is the more convenient and least expensive tribunal for the purpose.
It is very true that the introduction of illegal evidence by the prevailing party will not, of necessity, in all cases, compel a reversal of the judgment, whether the issue is tried by the court or the jury. When all the evidence is spread upon the record, and from that it appears that the party has given in evidence an instrument that has not been attacked, to which the law assigns a specific legal effect, and which alone entitles him to recover, a judgment in his-favor will not be ^disturbed, because he may have given other evidence which ought not to have been admitted. In such case, no rightful discretion exists in the tribunal finding the issue to deprive him of the full benefit of his evidence; and the law having fixed its value, there can lawfully be but one result. But when, as in this case, disputed facts are to be found upon evidence of no determinate value, dependent entirely upon the credit to be given to» witnesses, and the intrinsic force of the circumstances sworn to, and illegal evidence has been admitted, it is impossible for a reviewing court, in most cases, to say what might or should have been the result if such illegal evidence had not been received. Such evidence would, ordinarily, be estimated very differently by different, minds, and often very differently in the court whore it is given and the witnesses seen-, than in a court who see it only upon paper and separated from many of the surrounding circumstances. In all such cases, it is the absolute right of the parties to have the judgment and discretion, upon competent evidence, of the tribunal provided by law for the trial of disputed facts, whether it be the jury or the court by consent put in its place; and this court has no right to substitute its judgment and discretion for theirs, or to conjecture what might have been the finding upon a different state of the evidence than that actually before them.
The judgment of the Supreme Court, as well as the judgment of the Commercial Court, affirmed by it, is reversed, and the case; remanded to the court of common pleas for further proceedings.